**SO ORDERED.**

**SIGNED this 01 day of November, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **CHRISTIAN DEVEN THOMPSON** | ) | **No. 05-13344** |
| | ) | **Chapter 7** |
| Debtor | ) | |
| | ) | |
| **ARMEN JOEL DEMERDJIAN** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Adv. No. 05-1167** |
| | ) | |
| **CHRISTIAN DEVEN THOMPSON** | ) | |
| | ) | |
| Defendant | ) | |

**M E M O R A N D U M**

This adversary proceeding is before the court on a complaint by the plaintiff, Armen Joel Demerdjian, to determine the dischargeability of a debt allegedly owed to him by the defendant, Christian Deven Thompson, arising out of the plaintiff's purchase of a massage school business

from the defendant. The issues for decision are (1) whether the defendant owes a debt to the plaintiff that is nondischargeable under § 523(a)(2) or (4) of the Bankruptcy Code, and (2) if so, the amount of the damages suffered by the plaintiff as a result of such alleged injury. Having considered the proof and arguments of the parties, the court now makes its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**I.**

The defendant operated a massage school known as Natural Touch Institute, LLC ("NTI"). The plaintiff attended and graduated from the school and began discussing a purchase of the school in the summer of 2004. The parties began serious negotiations in late September or early October of that year. Meanwhile, beginning as early as June 2003, students began making complaints about the defendant to the Tennessee Higher Education Commission. THEC representatives discussed these complaints with the defendant during a meeting in June 2004. On September 16, 2004, THEC assessed a $500 fine against the school due to the defendant's failure to attend a required workshop in August, requiring payment of the fine by October 11, 2004. The defendant did not disclose any of these problems with THEC to the plaintiff during the negotiation of the sale of the school. The plaintiff communicated with THEC regarding the process of transferring ownership of the school, but never asked about whether there were any investigations or other open issues relating to the school and THEC did not volunteer any such information or invite the plaintiff to review their file on NTI.

On October 15, 2004, the parties executed a Purchase Agreement whereby the defendant agreed to sell and the plaintiff agreed to buy "that certain business known as Natural Touch Insti-

tute, LLC . . ., and certain equipment and inventory related thereto . . ., and certain debt associated therewith." The plaintiff agreed to pay $50,000 for the business, in the form of (1) $10,000 as half of the down payment, (2) the other $10,000 of the down payment to be deposited into a certificate of deposit in the defendant's name "pending the issuance of a temporary authorization to DEMERDJIAN from the Tennessee Higher Education Commission, at which time the ½ down payment of $10,000.00 shall immediately be disbursed to THOMPSON," and (3) payments of $600 per month from November 1, 2004, through May 1, 2005, (4) payments of $1,800 per month from June 1, 2005, through November 1, 2005, and (5) payments of $1,250 per month from December 1, 2005, until the balance of the purchase price had been paid. In addition, the defendant would continue to serve as an instructor and as the marketing director through May 2005 for compensation of $1,400 per month plus $20 per hour for each hour over 20 per week. Section 5 of the Purchase Agreement provides:

> DEMERDJIAN agrees to assume sole responsibility for all legal and financial obligations of Natural Touch Institute, LLC, including any ongoing lease payments, as of the execution of this Agreement. The parties agree to incorporate by reference the itemized list of debts and obligations assumed by DEMERDJIAN under Exhibit "A" to this Agreement, which is attached hereto and incorporated by reference, and DEMERDJIAN agrees to indemnify and hold THOMPSON harmless from the repayment of these specific debts and obligations only.

Liabilities omitted from Exhibit "A" are the $500 THEC fine, a $4,000 attorney's fee bill,[1] back pay owed to instructors,[2] and a claim for dishonored gift certificates, which the plaintiff

---

[1] A liability to a law firm of $2,031.03 is listed on Exhibit "A" to the Purchase Agreement.

[2] The exhibit does list debts due to three instructors, although the amounts owed are left blank. In any event, when asked during direct examination, the plaintiff could not specify the amounts of the liabilities to the instructors.

estimates totaled $1,000. Exhibit "B" to the agreement is a 4½-page list of the office equipment, furniture, and office and massage equipment acquired by the plaintiff. The plaintiff testified that he had no opinion regarding the value of those tangible assets, other than he thought the value was "very low." The plaintiff made the $20,000 down payment on October 21, 2004, and made the first monthly installment payment of $600 on November 1, 2004.

Also on November 1, 2004, THEC sent the defendant a letter giving notice of its intention to revoke NTI's authorization to operate if the $500 fine was not paid by November 12, 2004. The plaintiff received a copy of the letter and, when he asked the defendant about open issues with THEC, the defendant responded that they had all been resolved.

On or about November 17, 2004, THEC informed the plaintiff that he would not be authorized to operate the school until its association with the defendant was terminated. The plaintiff then discovered the unresolved issues that the defendant had with THEC. Thereafter, on November 22, 2004, the parties executed an Addendum to Purchase Agreement providing for the termination of the defendant's relationship with NTI. The addendum also adjusted the installment payment schedule to provide for a $700 payment by December 20, 2004, and 19 monthly payments of $1,500 per month with a final payment of $200. Paragraph 6 of the addendum provides: "All other provisions of the original PURCHASE AGREEMENT executed October 15, 2004 not addressed in this ADDENDUM remain in full force and effect." The plaintiff mailed a copy of the addendum to THEC on November 23, 2004. He made the $700 payment on December 20 and 23, 2004, and paid the defendant $1,500 on January 5, 2005.

THEC informally permitted the plaintiff to operate the school, but did not act on the request to transfer ownership due to the outstanding problems with the defendant, NTI's owner of record. On January 5, 2005, THEC sent the defendant a "cease and desist" letter, revoking NTI's authorization to operate, due to the nonpayment of the fine and the defendant's failure to respond to and resolve the student complaints. The plaintiff "taught out" the class that was in progress at the time, so that the students could begin massage practices prior to the institution of a new national massage examination. THEC prohibited the plaintiff from collecting tuition from those students because the form of the enrollment agreement they had signed was unacceptable. In January and February 2005, the defendant withdrew the $10,000 down payment deposited into the certificate of deposit account, although there is no dispute that the plaintiff had not received "temporary authorization" from THEC.[3] At some point following the issuance of a demand letter on January 12, 2005, the plaintiff stopped making installment payments to the defendant and initiated litigation against him in the Chancery Court of Hamilton County, Tennessee.

On May 27, 2005, the defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Following the trial of this and a companion adversary proceeding on October 3, 2006, the court entered an order dismissing the companion proceeding, in which the

---

[3] The plaintiff testified that the term as used in the Purchase Agreement was intended to have the same meaning ascribed to it by THEC's regulations. Section 1540-1-2-.03(1)(g) of the Official Compilation of Rules and Regulations of the State of Tennessee defines "authorization to operate" to mean "permission or licensure to operate for a specified time in a specified place(s)." Section 1540-1-2-.21(1)(a) provides for a temporary authorization following (1) application review, (2) site visitation as deemed necessary and feasible by THEC, (3) recommendation of authorization by the Committee on Postsecondary Education Institutions, and (4) favorable THEC action. Temporary authorization is granted by letter, and the school must operate under temporary authorization for 24 months before receiving regular authorization. Tenn. Comp. R. & Regs. 1540-1-2-.21(1)(b).

plaintiff sought an order denying the defendant a discharge. Accordingly, the court granted a discharge on October 5, 2006, excepting the defendant's debt to the plaintiff from the operation of the discharge to the extent that the court determines in this proceeding that the debt is not dischargeable in bankruptcy.

## II.

### A.

The plaintiff relies on § 523(a)(2) and (4) of the Bankruptcy Code in contending that the defendant's indebtedness is nondischargeable. Section 523(a)(2) provides, in pertinent part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud. . . .

11 U.S.C. § 523(a)(2)(A). The Sixth Circuit has enumerated the elements under this provision as follows:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). The party seeking the exception to discharge bears the burden of proof on each element of its claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

As can be seen from *Rembert*, the first element that the plaintiff must prove is that the debtor obtained money through a material misrepresentation. The only affirmative representation alleged by the plaintiff is Section 5 of the Purchase Agreement, which deals with the plaintiff's assumption of liabilities of NTI. Section 5 of the Purchase Agreement provides that the plaintiff would be responsible for the liabilities listed on Exhibit "A," and the list was incorporated into the agreement by reference. The plaintiff contends that the defendant's failure to list the unresolved student complaints as a liability on Exhibit "A" was a material misrepresentation. The court disagrees for two reasons. First, although Section 5 of the Purchase Agreement provides that the plaintiff would be responsible for the liabilities listed on Exhibit "A", the language of the provision does not represent that the listed debts are all of the school's liabilities. Second, it is apparent from the provision and from the types of obligations listed on Exhibit "A" that it relates only to obligations in the nature of debts, not intangible, non-financial obligations such as the defendant's obligations to resolve issues with THEC. Accordingly, Section 5 does not constitute a material representation as required under § 523(a)(2)(A).

Aside from relying on Section 5 of the Purchase Agreement as the misrepresentation at issue in this proceeding, the plaintiff also contends that the defendant's failure to disclose that he had unresolved issues with THEC was a material omission that qualifies as a fraudulent misrepresentation for purposes of § 523(a)(2)(A). Assuming that the failure to disclose is tantamount to

a misrepresentation,[4] the plaintiff has not proven that he justifiably relied on the nondisclosure and that the reliance was the proximate cause of the plaintiff's loss.

Usually, in a case such this a plaintiff will attempt to prove the reliance component of his cause of action by testifying that he would not have entered into the particular transaction with the defendant had he known that the representation at issue was false. Here, however, the plaintiff signed the Addendum to Purchase Agreement well after learning about the THEC issues. Indeed, the seriousness of the concerns of THEC – requiring the total disassociation of the defendant from the massage school – was the very reason for the addendum. Yet the plaintiff signed the document, thereby reaffirming all terms and conditions of the original Purchase Agreement not modified thereby. Such an act by the plaintiff undermines any claim by the plaintiff that he would not have entered into a Purchase Agreement had he known about the issues with THEC. More significantly, by signing the addendum that reaffirmed all terms and conditions of the original Purchase Agreement, the plaintiff cannot establish that any loss arising from the agreement was proximately caused by his reliance on the defendant's alleged fraudulent omission. The plaintiff essentially reaffirmed all of the terms and conditions of the original

---

[4] A failure to disclose information may constitute a fraudulent misrepresentation for the purposes of the dischargeability statute, but only when one has a duty to speak. *E.g.*, *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir. 2001); *Citibank (S. Dak.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996); *see also Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("When an allegation of [federal securities] fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.); Restatement (Second) of Torts §§ 550, 551 (1977). *But see Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1580 (11th Cir. 1986) (not making full disclosure of intent not to repay or inability to repay does not fall within § 523(a)(2)(A)). Whether the debtor had an affirmative duty to disclose the issues with THEC to the plaintiff before the parties entered into the original Purchase Agreement is a matter that was not addressed by the parties, and it need not be decided in light of the court's ruling on the other elements of plaintiff's cause of action under § 523(a)(2)(A).

Purchase Agreement after he learned about the pending issues with THEC. Thus, even assuming that the defendant's failure to disclose the THEC issues constituted a material false representation, the plaintiff's proof failed to establish that he justifiably relied on the misrepresentation, and that such reliance proximately caused a loss to the plaintiff.

Because the plaintiff's proof failed to establish all the elements under § 523(a)(2)(A), the plaintiff would not be entitled to a judgment of nondischargeability under that section. It should be noted, too, that the plaintiff's proof also failed to prove the amount of damages resulting from the alleged misrepresentation. Even if the plaintiff had been fraudulently induced to enter into the agreement to acquire NTI's tangible assets and its going concern value, and even if it is assumed that he did not receive the value of the business as a going concern because of the problems with THEC, the plaintiff did not introduce evidence regarding what portion of the purchase price was attributable to the going concern value. The total purchase price was to be $50,000, but there was no evidence as to how much of that price consists of the value of the tangible assets, which are considerable in number. Although the plaintiff has a claim for breach of contract, only that portion of the damages proximately caused by the fraud is nondischargeable under § 523(a)(2)(A). *See, e.g., Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 24-25 (Bankr. S.D.N.Y. 2002) (carefully and thoroughly distinguishing between building contractor fraud and plain breach of contract in determining damages and dischargeability issues); *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 703-04 (Bankr. S.D.N.Y. 1998) (analysis still required on each debt to determine whether it was proximately caused by § 523(a)(2)(A) acts).

For the foregoing reasons, the plaintiff has failed to prove by a preponderance of the evidence that he is entitled to a nondischargeability judgment under the terms of 11 U.S.C. § 523(a)(2)(A).

**B.**

The plaintiff also relies on § 523(a)(4) of the Bankruptcy Code in contending that the defendant's indebtedness is nondischargeable. That statute provides, in pertinent part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

The plaintiff argues that the defendant continuing to serve as an "adviser" to NTI after the Purchase Agreement was signed (but prior to the execution of the Addendum to Purchase Agreement 38 days later) placed the defendant in a "fiduciary capacity." First, Section 2 of the Purchase Agreement did not retain the defendant as an "advisor," but only "as Instructor and Marketing Director." Moreover, to establish "fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4), a creditor must prove the existence of an express or technical trust. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997). The plaintiff has failed to prove the existence of such a trust. Accordingly, the court will enter judgment for the defendant on the cause of action under § 523(a)(4).

## C.

The complaint also asks the court to "make a determination on the allegations of fraud perpetrated by the Defendant upon the Plaintiff pursuant to both state and federal law," declare the Purchase Agreement null and void, and award a money judgment for "all monies paid to Defendant pursuant to the Agreement,"[5] damages under the Tennessee Consumer Protection Act, and reasonable attorney's fees and costs. The court has jurisdiction to award a money judgment for a debt held to be nondischargeable, *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965-66 (6th Cir. 1993), but the court has determined that the defendant's debt to the plaintiff is dischargeable. The court may also determine the validity or priority of a claim, but the plaintiff has not filed a proof of claim seeking a distribution from the estate and, in any event, no such distribution will be made as the trustee has abandoned all property of the estate. To determine the validity and amount of a claim for fraud or breach of contract or under the Tennessee Consumer Protection Act would represent an exercise in futility since the debt is dischargeable and no distribution will be made in the defendant's Chapter 7 case.[6]

---

[5] Similarly, the complaint also prays "[t]hat Plaintiff be awarded all sums of money shown to have been expended in furtherance of the Agreement, induced by the willful and knowing actions of the Defendant of fraud and material breach of contract. Said sums would include, but are not limited to, the initial down payment of ten thousand dollars ($10,000.00), the certificate of deposit being held at Bank of America in the amount of ten thousand dollars ($10,000.00), all scheduled payments made to Defendant for the Purchase of NTI, and all other expenses incurred by Plaintiff in maintaining the scholastic programs at NTI."

[6] In the event that the trustee hereafter discovers and recovers assets for the estate, the plaintiff could then file a proof of claim and the court would pass on the validity and amount of the claim if and when an objection to its allowance is filed.

Regarding the plaintiff's request that the court declare the Purchase Agreement, which would include the Addendum, to be null and void, the plaintiff has not established any basis for granting this type of relief in this proceeding.

### III.

For the foregoing reasons, the court will enter a separate order and judgment dismissing the plaintiff's complaint.

###